1

2                                                                    **E-Filed 5/2/06**

3

4

5

6

7

8                                        NOT FOR CITATION

9                        IN THE UNITED STATES DISTRICT COURT

10                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                                       SAN JOSE DIVISION

12

13   BF&W ASSOCIATES,                          Case Number C 05-02381 JF

14                              Plaintiff,      ORDER[1] GRANTING IN PART AND
                                               DENYING IN PART MOTOROLA'S
15                    v.                        MOTION TO DISMISS PLAINTIFF'S
                                               THIRD AMENDED COMPLAINT
16   MOTOROLA, INC.,
                                               [Docket No. 39]
17                              Defendant.

18

19                                       **I. BACKGROUND**

20        On November 12, 2004, Plaintiff BF&W Associates ("BF&W") filed its original

21   complaint against Defendants Motorola, Inc. ("Motorola"), Janiece Webb ("Webb"), Philippe

22   Kahn ("Kahn"), Eli Porat ("Porat") Jens Hortsman ("Hortsman"), and Uecker & Associates, Inc.

23   ("Uecker & Associates") in the Santa Clara Superior Court.  BF&W alleged five claims: (1)

24   breach of contract, (2) account stated, (3) quantum meruit, (4) conversion, (5) breach of fiduciary

25   duty, and (6) unfair business practices.  Motorola, Kahn, and Uecker & Associates filed

26   demurrers, which the state court sustained in part and overruled in part.  BF&W settled with

27   ─────────────────

28        [1] This disposition is not designated for publication and may not be cited.

1   Uecker & Associates and dismissed its claims against Porat.

2       On May 6, 2005, BF&W filed its First Amended Complaint ("FAC") in the Santa Clara

3   Superior Court, against Defendants Motorola, Webb, Kahn, and Hortsman.  BF&W dismissed

4   Kahn and Hortsman, and Motorola and Webb removed the action to this Court.  On June 16,

5   2005, Motorola and Webb moved to dismiss BF&W's claims for quantum meruit and

6   misappropriation of trade secrets.  On the same date, BF&W moved to strike all claims for

7   punitive damages from the FAC.  On August 15, 2005, this Court issued an order (1) dismissing

8   the claim for quantum meruit on the ground that the underlying agreement was for services rather

9   than for goods, subjecting it to a two-year, rather than a four-year, statute of limitations; the

10  Court granted "leave to amend so that BF&W [could] attempt to allege facts bringing the claim

11  within the exception [for contracts for the sale of goods];" (2) dismissing the claim for

12  misappropriation on the ground that it was barred by the applicable three-year statute of

13  limitations, granting "leave to amend so that BF&W [could] attempt to allege facts

14  demonstrating accrual within the three-year limitations period;" and (3) granting the motion to

15  strike claims for punitive damages.

16      On September 13, 2005, BF&W filed its Second Amended Complaint ("SAC"), naming

17  Motorola as the only Defendant.  Motorola moved to dismiss the SAC as time-barred based on

18  the alleged accrual date of January 5, 2000.  BF&W filed a notice of errata, stating that the date

19  of January 5, 2000 was a typographical error and that the correct accrual date is January 5, 2001.

20  At a case management conference on October 14, 2005, BF&W agreed to submit an amended

21  complaint containing the January 5, 2001 date.  On October 17, 2005, BF&W filed the operative

22  Third Amended Complaint ("TAC").  BF&W alleges five claims: (1) breach of written contract,

23  (2) breach of implied-in-fact contract, (3) quantum valebant / quantum meruit, (4) breach of

24  fiduciary duty as an agent, and (5) breach of fiduciary duty as a controlling shareholder.  BF&W

25  also alleges alter ego and successor liability, though it does not reallege claims for punitive

26  damages.  Motorola now moves to dismiss all claims on the ground that they are barred by the

27  applicable statutes of limitations.  Motorola argues that none of the current claims, except for the

28

2

1   claim for quantum meruit, relates back to claims raised in the original complaint.  Motorola also

2   argues that the claim for quantum meruit, although it does relate back, is nevertheless barred by

3   the applicable statue of limitations.

4        BF&W alleges the following facts in the TAC.  BF&W owns a building in San Jose,

5   California, which it leased to OpenGrid, Inc., formerly known as Ensemble Solutions, Inc.

6   (collectively, "OpenGrid") on April 19, 2000.  OpenGrid breached its lease with BF&W, and, on

7   November 22, 2002, BF&W obtained a judgment against OpenGrid in the amount of

8   $1,308,684.23.  OpenGrid assigned to Uecker & Associates the claims that BF&W now brings.

9   On November 12, 2004, BF&W filed the instant action as a beneficiary of this assignment and as

10  a judgment creditor of OpenGrid.  Since the filing of the action, BF&W has received an

11  assignment of OpenGrid's claims from Uecker & Associates.

12       OpenGrid was a company that created wireless instant messaging technology that could

13  be adapted for use with cellular telephones.  On or about October 7, 1999, OpenGrid entered into

14  a Series C Preferred Stock Purchase Agreement ("Stock Purchase Agreement") and a Warrant

15  Agreement with Motorola.  Under the Stock Purchase Agreement, Motorola agreed to purchase

16  more than two million shares of Series C preferred stock in OpenGrid for a total purchase price

17  of $5,000,000.  The parties also agreed "to obtain rights to use [OpenGrid's] Technology in or

18  with Motorola's wireless telecommunications products" and "to distribute by sublicense

19  [OpenGrid's] Technology for use by third parties as incorporated into Motorola's wireless

20  telecommunications products directly and indirectly through multiple tiers of distribution."  They

21  agreed also that "[u]pon receiving notice of any licensing opportunity, Motorola was required to

22  promptly inform OpenGrid in writing if it did not wish to license OpenGrid's technology."

23  Under the Warrant Agreement, Motorola "agreed to exercise 'commercially reasonable efforts'

24  to assist OpenGrid in finding customers for OpenGrid's technology, with the goal of achieving

25  certain specified customer and revenue objectives."  One of the objectives to which Motorola

26  agreed was that Motorola would license and distribute OpenGrid's technology "'as part of a

27  Motorola product offering.'"

28

3

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).  For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at 754-55.  Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

## III. DISCUSSION

As alleged by BF&W, the alleged claims arose no earlier than January 5, 2001.  BF&W alleges that "on or about January 5, 2001, without any explanation or justification, Motorola cancelled the Alien phone and cancelled the license of OpenGrid's technology."  Additional claims may have arisen subsequently: "Motorola subsequently refused, without any explanation or justification, to distribute OpenGrid's technology under a license with any of its products." The only other dates identified in the TAC are the date of OpenGrid's lease agreement with BF&W, the dates on which the Stock Purchase Agreement and the Warrant Agreement were entered into, and the dates of relevant legal action.  Accordingly, in evaluating whether BF&W has alleged the claims in the TAC within the relevant periods of limitation, the Court will use January 5, 2001 as the date upon which the claims arose.

Federal Rule of Civil Procedure 15(c)(2) provides, in part, that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted

Case No. C 05-02381 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTOROLA'S MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT
(JFLC1)

1   in the amended pleading arose out of the conduct, transaction, or occurrence set forth or

2   attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).  The Ninth Circuit

3   has held that relation back will be found "when the claim to be added will likely be proved by the

4   same kind of evidence offered in support of the original pleading." *In re Dominguez*, 51 F.3d

5   1502, 1510 (9th Cir. 1995) (internal quotations omitted).  In analyzing whether new claims relate

6   back, a court must "consider whether the original and amended pleadings share a common core

7   of operative facts so that the adverse party has fair notice of the transaction, occurrence, or

8   conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989).  When

9   "there is some doubt as to whether the cause is clearly barred, the rule should be liberally

10  construed, and especially is this so where the defendant is put to no disadvantage." *DeMalherbe*

11  *v. Int'l Union of Elevator Constructors,* 449 F.Supp. 1335, 1353 (N.D. Cal. 1978) (internal

12  quotations omitted).

13         BF&W argues that a recent Supreme Court case, *Mayle v. Felix*,  125 S.Ct. 2562 (2005),

14  stands for the proposition that "an amendment based on facts not previously alleged may still

15  'relate back.'" This mistates the holding of *Mayle*.  The Supreme Court instead held that the

16  Ninth Circuit's allowance of amendments to habeas corpus petitions "so long as the new claim

17  stems from the habeas petitioner's trial, conviction, or sentence," was too broad.  *Id*. at 2570.

18  Rather, an amended claim in a habeas petition relates back only if it shares a "common core of

19  operative facts" with the original claim.  *Id*. at 2574.  The Court distinguished *Tiller v. Atlantic*

20  *Coast Line R. Co.*, 323 U.S. 574, 580-81(1945), in which the Court "held that the amendment

21  related back, and therefore avoided a statute of limitations bar, even though the amendment

22  invoked a legal theory not suggested by the original complaint and relied on facts not originally

23  asserted."  *Mayle*, 125 S.Ct. at 2572.  The Court noted that the plaintiff in *Tiller* "based her

24  complaint on a *single* 'occurrence,' an accident resulting in her husband's death."  *Id*. (emphasis

25  added).  In contrast, the petitioner in *Mayle* "targeted separate episodes, the pretrial police

26  interrogation of witness Williams in his original petition, his own interrogation at a different time

27  and place in his amended petition."  *Id*.

28

5

1    BF&W also argues that its broad amendments should be allowed because it only recently

2    discovered the contracts that are the bases for the new allegations.  It asserts that because it is a

3    judgment creditor, it did not have access previously to all of OpenGrid's agreements.  It contends

4    that because plaintiffs are generally not required to "plead facts which are peculiarly within the

5    control of defendants," *In re Network Equipment Tech., Inc., Litigation*  762 F.Supp. 1359, 1366

6    (N.D. Cal. 1991), it may amend its complaint to include these new allegations.  However, the

7    cases cited by BF&W to support this argument do not address the question of when new

8    allegations relate back to previous allegations for purposes of tolling a statute of limitations.

9    BF&W argues separately that all of the statutes of limitations in the present action should

10    be extended by one year, pursuant to California Code of Civil Procedure § 708.230(a):

11        an action shall be commenced *pursuant to this article* before the expiration of the
          later of the following times:
12            (1) The time when the judgment debtor may bring an action against the
          third person concerning the property or debt.
13            (2) One year after creation of a lien on the property or debt *pursuant to this
          title* if the lien is created at the time when the judgment debtor may bring an
14        action against the third person concerning the property or debt.

15    (emphasis added).  However, the present action was not commenced pursuant to the Creditor's

16    Suit Article of the California Code of Civil Procedure, § 708.210 *et seq*.  BF&W has not

17    invoked this statute in any pleading or motion paper prior to its opposition to the instant motion.

18    Moreover, although the statute expressly precludes the right to a jury trial, Cal. Civ. Code §

19    708.270, BF&W has demanded a jury trial here.  Accordingly, the Court concludes that §

20    708.230 does not apply.

21

22    **1.    Breach of written contract and implied-in-fact contract**

23    The parties agree that the applicable statute of limitations for the claim for breach of

24    written contract is four years.[2]  However, they disagree about the applicable statute of limitations

25    for the claim for breach of an implied-in-fact contract.  Motorola contends that it is two years,

26    _____

27        [2] BF&W cites California Commercial Code § 2725 for this proposition, while Motorola
      cites California Code of Civil Procedure § 337.

28
                                                    6

1  pursuant to California Code of Civil Procedure § 339, while BF&W contends that it is four years,

2  pursuant to California Commercial Code §§ 2725 and 1201(3).  The Court need not resolve this

3  dispute here, because it concludes that neither the claim for breach of written contract nor for

4  breach of an implied-in-fact contract relates back.  Even assuming that the statute of limitations

5  for each claim is four years, both are time-barred.

6          BF&W's claim for breach of written contract alleges that Motorola breached the Stock

7  Purchase Agreement and the Warrant Agreement by cancelling "the Alien phone" and "the

8  license of OpenGrid's technology," and by subsequently refusing "to distribute OpenGrid's

9  technology under a license with any of its products."  The "license and distribution of

10 OpenGrid's technology" had been "the essence and predominant purpose of the agreements

11 between the parties."  After the alleged breach, "Motorola simply claimed Opengrid's [sic]

12 technology as its own and distributed OpenGrid's technology without a license and without

13 compensating OpenGrid."  BF&W's claim for breach of implied-in-fact contract alleges that

14 "[u]nder the implied license agreement, Motorola was required to distribute OpenGrid's

15 technology with Motorola's products, to pay OpenGrid reasonable royalties thereon and to pay

16 the reasonable value for the custom development and installation of OpenGrid's technology."

17         Motorola argues that these claims do not relate back to the original complaint because the

18 original complaint does not refer to any alleged breach of the Stock Purchase Agreement, the

19 Warrant Agreement, or any implied licensing agreement.   Instead, the original complaint

20 asserted a claim for breach of contract based on an alleged agreement that, as described therein,

21 was materially different from the contracts alleged in the TAC.  The breach of contract claim in

22 the original complaint states in relevant part: "On or about May 20, 2000, Motorola agreed in

23 writing to pay OpenGrid a minimum of one million dollars ($1,000,000) for services relating to

24 the custom development, integration, testing, maintenance, support and hosting of OpenGrid's

25 proprietary Intelligent Messaging Solution, an instant messaging technology which was to be

26 incorporated into Motorola cell phones under a license."  BF&W alleged that OpenGrid

27 performed all services required under this agreement, and, on November 15, 2001, delivered an

28

7

Case No. C 05-02381 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTOROLA'S MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT
(JFLC1)

1   invoice to Motorola for $1,175,000.  BF&W sought payment of this alleged unpaid invoice.

2       BF&W argues that all of the claims in the original and amended complaints relate to the

3   "ultimate wrongful act," which was "Motorola's misappropriation of OpenGrid's technology."  It

4   contends that Motorola had notice of "the facts giving rise to the Stock Purchase Agreement and

5   Warrant Agreement because Plaintiff alleged that Motorola's strategy was to acquire OpenGrid's

6   technology as part of an investment."  However, the original complaint alleges only that

7   Motorola agreed to a services contract with OpenGrid.  While the original complaint does

8   include allegations that Motorola invested in OpenGrid, there is no suggestion, express or

9   implied, that this investment was done as part of a licensing agreement.  While the original

10  complaint refers to a license in the context of alleging that the Intelligent Messaging Solution

11  was "an instant messaging technology with was to be incorporated into Motorola cell phones

12  under a license," this allegation offered only by way of description.  There is no allegation in the

13  original complaint that there was any breach of or problem with this alleged license.

14  Accordingly, the original complaint did not put Motorola on notice of the breach of written

15  contract and breach of implied-in-fact contract claims alleged in the TAC, and nor are these

16  claims based on the same "conduct, transaction, or occurrence set forth or attempted to be set

17  forth in the original pleading."  Fed. R. Civ. P. 15(c)(2).

18      BF&W compares the instant situation to that in *Union Pacific R. Co. v. Nevada Power

19  Co.,* 950 F.2d 1429 (9th Cir. 1991).  In that case, the Ninth Circuit held that "Union Pacific's

20  reference to only Tariff 6034 in its original complaint does not foreclose its subsequent request

21  for recovery of reparations made under Tariff 6020."  *Id.* at 1432.  However, that court went on

22  to explain:

23          Union Pacific's claim under Tariff 6020 *arose as a direct result of* the facts surrounding
            its claim under Tariff 6034. When Union Pacific cancelled Tariff 6034 after ordered to do
24          so by the ICC, Tariff 6020 automatically became effective, and Union Pacific began
            charging rates which later resulted in more reparation payments paid by Union Pacific.
25          Nevada Power *had "fair notice" of the disputed transaction*.

26
    *Id* (emphasis added).  Accordingly, because BF&W's new contract allegations do not arise as a
27
    direct result of the facts alleged in the original complaint and Motorola did not have fair notice of
28

8

1    these new allegations, *Union Pacific* does not provide support for BF&W's position.

2    Additionally, while "[i]n close cases, the prejudice to the defendant from allowing the claim to

3    relate back may be dispositive," *DeMalherbe v. International Union of Elevator Constructors*,

4    449 F. Supp. 1335, 1353 (D.C. Cal. 1978), this Court need not evaluate the prejudice to the

5    defendant because it concludes that the new allegations clearly were not pled in the original

6    complaint.

7         The terms of the Stock Purchase Agreement, which is referenced in the TAC and may be

8    considered by the Court, *see, e.g.*, *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970

9    (9th Cir. 1999), further convince the Court that Motorola was not on notice of the allegations that

10   it breached a licensing agreement.  While the TAC alleges that the Stock Purchase Agreement

11   obligated Motorola to obtain certain licensing rights to OpenGrid's technology, the agreement

12   itself instead *obligates OpenGrid* to "*offer* Motorola the *opportunity to obtain rights*."  FAC, Ex.

13   A, p. 13.  Accordingly, it is unreasonable to conclude that Motorola would have been on notice

14   of allegations that are related to a contract that was not referenced in the original complaint and

15   do not conform with the terms of the contract.

16        While it does not appear that BF&W can allege any additional facts that would alter the

17   foregoing analysis, the Court notes that these particular claims are asserted for the first time in

18   the TAC.  Accordingly, the Court will dismiss the claims for breach of contract and breach of

19   implied-in-fact contract with leave to amend.

20

21   **3.    Quantum valebant / Quantum meruit**[3]

22        As stated in the original complaint, the quantum meruit claim was "for services relating

23   to the custom development, integration, testing, maintenance, support and hosting of OpenGrid's

24

25        [3] Quantum valebant refers to claims for property, *see, e.g.*, *Lake v. Wyatt Earp*
26   *Enterprises*, Inc., 26 Cal.Rptr. 683, 686 (Ct. App. 1962), while quantum meruit "refers to the
     well-established principle that 'the law implies a promise to pay for services performed under
27   circumstances disclosing that they were not gratuitously rendered.'" *Huskinson & Brown, LLP v.*
     *Wolf*, 9 Cal. Rptr. 3d 693, 696 (2004) (quoting *Long v. Rumsey*, 12 Cal.2d 334, 342 (1938)).

28
                                                    9

1   proprietary Intelligent Messaging Solution, an instant messaging technology which was to be

2   incorporated into Motorola cell phones under a license."   In its August 15, 2005, this Court

3   dismissed the claim for quantum meruit on the ground that the underlying agreement was for

4   services rather than for goods, subjecting it to a two-year, rather than a four-year, statute of

5   limitations.  The Court granted "leave to amend so that BF&W may attempt to allege facts

6   bringing the claim within the exception [for contracts for the sale of goods]."

7          BF&W's original claim for quantum meruit alleged in relevant part: "As a direct, legal

8   and proximate result of Motorola's failure to pay for the services, OpenGrid was entitled to the

9   reasonable value of the services provided in the amount of $1,175,000."  In the TAC's claim for

10  "quantum valebant / quantum meruit," BF&W alleges that "[t]he custom development and

11  installation of OpenGrid's technology"—the services alleged in the original complaint—"were

12  incidental to the license and distribution [of] OpenGrid's technology."  It alleges further that

13  "[t]he license and distribution of OpenGrid's technology to Motorola's customer's constituted

14  the essence and predominant purpose of the transactions between the parties."

15         To the extent that the new claim alleges a breach of contract for services in the amount of

16  $1,175,000, it relates back to the claim alleged in the original complaint.  However, as stated in

17  this Court's Order of August 15, 2005, this claim relates to services and is subject to a two-year

18  statute of limitations.  Cal. Civ. Code § 339.  To the extent that the new claim alleges that the

19  services contract was incidental to the licensing and distribution claims, it does not relate back to

20  the original claim.  As discussed above, the new allegations of licensing and distribution

21  agreements do not relate to the original complaint.  The parties dispute whether the applicable

22  statute of limitations for a claim for quantum valebant (goods) is two or four years.  Having

23  concluded that the new allegations do not relate back to the original complaint, the Court need

24  not reach this question.  Even assuming a four-year statute of limitations, the claim is barred.

25         Again, it does not appear that BF&W can allege any additional facts that would alter the

26  Court's analysis.  In this case, however, BF&W has had several opportunities to plead an

27  adequate claim.  Accordingly, the claim for quantum valebant / quantum meruit will be

28

10

Case No. C 05-02381 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTOROLA'S MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT
(JFLC1)

1
2
3    **5.    Breach of fiduciary duty as an agent and as a controlling shareholder**

4         The parties agree that the applicable statute of limitations for the claims for breach of

5    fiduciary duty as an agent and as a controlling shareholder is four years.  Cal. Code Civ. Proc. §

6    343.  Motorola argues that these claims do not relate back to the claim in the original complaint

7    for breach of fiduciary duty.  In the original complaint, BF&W alleged that all Defendants – at

8    that time, including Motorola, Webb, Kahn, Porat, Hortsman, and Uecker & Associates –

9    "breached their fiduciary duties as the officers, directors and majority shareholders of OpenGrid

10   by permitting, facilitating and orchestrating the intentional transfer and diversion of OpenGrid's

11   instant messaging technology, know-how, development and related services to Motorola for

12   inadequate consideration."

13        In its TAC, BF&W alleges a claim for breach of fiduciary duty as an agent based on a

14   relationship between BF&W that was not alleged previously: "Under the terms of the Warrant

15   Agreement, Motorola agreed to act as OpenGrid's agent for the purpose of finding customers for

16   OpneGrid's technology and products, and agreed to refer these customers to OpenGrid."

17   BF&W's claim for breach of fiduciary duty as a controlling shareholder also relies on allegations

18   of a relationship that was not previously alleged, that of a controlling shareholder.  However, in

19   its original complaint, BF&W did allege that Motorola violated California Business &

20   Professions Code section 17200, *et. seq*, "as a result of [Motorola's] improper domination and

21   control of OpenGrid."

22        Because BF&W's original allegation of a breach of fiduciary duty and the claims in the

23   TAC of breach of fiduciary duty as an agent and as a controlling shareholder both are based on

24   the underlying allegation that BF&W engaged in self-dealing, the Court concludes that these

25   claims do relate back.  Accordingly, the Court will not dismiss either claim.

26
27
28
                                                    11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion to dismiss will be GRANTED IN PART and DENIED IN PART, as set forth above.

DATED: May 2, 2006

_____
JEREMY FOGEL
United States District Judge

Case No. C 05-02381 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTOROLA'S MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT
(JFLC1)

1    This Order has been served upon the following persons:

2

3    Andrew L.Y. Chang          achang@shb.com, rdarmstadt@shb.com, shicks@shb.com,
                                mreyes@shb.com, lgildea@shb.com, cmartinez@shb.com,
                                scastillo@shb.com

4

5    Peter W. Gumaer            pgumaer@prattattorneys.com, rtrazo@prattattorneys.com

6    Michael C. Osborne         mosborne@shb.com, dcampos@shb.com, shicks@shb.com,
                                mreyes@shb.com, hstockwell@shb.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           13
      Case No. C 05-02381 JF
      ORDER GRANTING IN PART AND DENYING IN PART MOTOROLA'S MOTION TO DISMISS PLAINTIFF'S
      THIRD AMENDED COMPLAINT
      (JFLC1)